**M & R MARKING SYSTEMS, INC., Plaintiff,**

v.

**TOP STAMP, INC., Steve Hewitt, and Edison TSE, Defendants.**

**Civ. No. 96–828 (WGB).**

United States District Court, D. New Jersey.

May 13, 1996.

468

Lerner, David, Littenberg, Krumholz & Mentlik by Sidney David, Roy H. Wepner, Gregory S. Gewirtz, Westfield, NJ, for Plaintiff.

Chasen, Leyner, Tarrant & Lamparello by Julien X. Neals, Secaucus, NJ, Dorsey & Whitney L.L.P. by Donald A. Kaul, Jerold I. Schneider, John E. Giust, Washington, D.C., for Defendants.

BASSLER, District Judge:

This case concerns alleged infringement of two patents, a design patent for a handle top for a hand stamp and a mechanical patent for a hand stamp itself. Plaintiff M & R Marking Systems, Inc. ("M & R") alleges that defendants, Top Stamp, Inc. and two of its officers, Edison Tse, President, and Steve Hewitt, Marketing Director are willfully infringing both patents.

M & R seeks a preliminary injunction enjoining defendants from importing, making, using, offering to sell, or selling products which infringe the two patents. This court's jurisdiction is pursuant to 28 U.S.C. § 1331 and § 1338(a). For the following reasons, plaintiff's application for a preliminary injunction is GRANTED with respect to the mechanical patent and DENIED with respect to the design patent.

## I. BACKGROUND

M & R is a corporation engaged in the sale of stamping equipment. M & R alleges that the defendants have infringed two of M & R's United States patents.

The two allegedly infringed patents are patent # 5,377,599 for an adjustable mount device for a pre-inked hand stamp (" '599 patent" or "mechanical patent") issued on January 3, 1995 and patent DES.346,396 for a handle top design for a hand stamp issued on April 24, 1994 (" '396 patent" or "design patent"). The mechanical patent is for a "hand stamp having an adjustment mechanism for adjusting the stroke of the hand stamp so that a lighter or darker imprint can be obtained." Complaint ¶ 11. The design patent covers the ornamental appearance of the top of a handle for a hand stamp. Complaint ¶ 13.

Defendant Edison Tse and his brother Wilson Tse are owners of one of the largest pre-inked stamp mount companies in the world, Claimchop Company Limited ("Claimchop") of Hong Kong. The Tse brothers also own Fen Hin Chon Enterprises Limited ("FHC"), a Hong Kong Company that designs the products manufactured and sold by Claimchop. The Tse brothers are also majority owners in defendant Top Stamp, a United

States wholesaler. M & R was the exclusive United States distributor of Claimchop's stamp mount products [1] from 1990–1992. M & R terminated its relationship with defendants in 1992.

One of Claimchop's stamp handles distributed by M & R contained a convex lens set within a circular recess. M & R also asked Claimchop to manufacture stamp handles containing a "watch crystal" design which incorporated a raised flat lens within the recess. Steven Sculler, the Vice–President of Marketing at M & R, subsequently obtained a patent on the design in April, 1994.

Plaintiff contends that the defendants have engaged in a pattern of infringement of both patents. Steven Sculler allegedly became aware that the defendants intended to infringe the design patent in the Spring of 1994. Steven Sculler Aff. ¶ 6–7. Steven Sculler notified M & R's intellectual property counsel who sent a cease and desist letter to Top Stamp & Steve Hewitt on May 4, 1994. Compl.Exh. B. On May 31, 1994, Top Stamp's counsel sent a letter to M & R's counsel indicating that Top Stamp voluntarily agreed to cease using the flat lens. Compl. Exh. E.

Both M & R and Top Stamp had booths at a marking industry trade show in September, 1995. Steven Sculler Aff. ¶ 8. Steven Sculler saw stamps at Top Stamp's booth that appeared to infringe the mechanical patent. He obtained one of the samples and forwarded it to M & R's counsel to review. Steven Sculler contacted Steve Hewitt on September 19, 1995 regarding the potential infringement of the mechanical patent. In that conversation, Hewitt allegedly indicated that Top Stamp also intended to market items that Steven Sculler believed would infringe the design patent. *Id.* ¶ 9. M & R's counsel subsequently sent out a second charge of infringement letter to Hewitt and Edison Tse. Compl.Exh. F.

On October 6, 1995, Hewitt responded in a letter indicating that Top Stamp had not sold any of the allegedly infringing products in

the United States. He also indicated that Top Stamp would not use the design patent's specific "raised flat plate." Compl.Exh. H.

Marc B. Sculler, Vice President of Finance at M & R, allegedly discovered the present alleged infringement while visiting one of M & R's customers, Texas Marking Products. Top Stamp had sent Texas Marking Products a promotional package including stamp samples that infringe both the mechanical and the design patent. Marc Sculler Aff. ¶ 10.

Plaintiff now moves for a preliminary injunction enjoining defendants from importing, making, using, offering to sell, or selling products which infringe the two patents.

## II. DISCUSSION

### A. Patent Preliminary Injunction Standards

35 U.S.C. § 282 provides that courts "may grant injunctions in accordance with the principles of equity to prevent a violation of any right secured by patent, on such terms as the court deems reasonable." The decisions of the federal circuit are controlling precedent in determining whether the court will issue a preliminary injunction in patent cases. *Hybritech, Inc. v. Abbott,* 849 F.2d 1446, 1451 n. 2 (Fed.Cir.1988) The standards for preliminary injunctions in patent cases, however, are no more or less stringent than the standards in other types of cases. *H.H. Robertson Company v. United Steel Deck, Inc.,* 820 F.2d 384, 387 (Fed.Cir. 1987) abrogated on other grounds *Markman v. Westview Inst. Inc.,* 52 F.3d 967 (Fed.Cir. 1995).

In order to issue a preliminary injunction, the court must be satisfied of four things:

1) that the moving party is likely to succeed on the merits;

2) that the moving party will suffer irreparable harm without injunctive relief;

1. At the preliminary injunction hearing the parties referred to Claimchop, FHC, Top Stamp Hong Kong, and Hopko, collectively as "Hopko". All of the companies are part of a group of companies owned by the Tse brothers. References to the stamp mount products of any one of these companies incorporate the products of the other companies.

3) that the need for an injunction outweighs the harm likely to be inflicted on others; and

4) that, if relevant, the public interest will be served by the injunction.

*See Id.*

## B. *Likelihood of Success on the Merits*

The first factor that the court must consider is the plaintiff's likelihood of success on the merits. In order to prevail on the merits, the plaintiff must prove that the patents are valid and that the defendants infringed the patents.

### 1. *Validity*

Although the plaintiff is entitled to a presumption of validity, "at the preliminary injunction stage, because of the extraordinary nature of the relief, the patentee carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed.Cir.1991). "While it is not the patentee's burden to prove validity, the patentee must show that the alleged infringer's defense lacks substantial merit." *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882–83 (Fed.Cir.1992). Defendants assert that both the design patent and the mechanical patent are invalid.

### a. *Design Patent*

Defendants argue that the design patent is invalid because (1) the design was on sale for more than one year before the plaintiff filed the application for the patent; (2) the design was not Steven Sculler's invention; (3) the design was obvious; (4) the design is not patentable because it is directed to a utilitarian rather than ornamental feature; and (5) the design was published more than one year before Sculler filed the patent application.

■ Defendants' first argument is that the product covered by the design patent was on sale more than 1 year before Sculler applied for the patent. 35 U.S.C. § 102(b) provides that an invention is not patentable if the invention was "in public use or on sale in this country, more than one year prior to the date of the application for patent." Steven Sculler applied for the patent on October 2, 1991.

Defendants contend that M & R purchased stamps incorporating the "watch crystal" design beginning in September, 1990, more than one year before Steven Sculler applied for the patent.

Plaintiff admits that it purchased stamps with the "watch crystal" lens from defendants. Plaintiff transmitted Steven Sculler's watch crystal design to the defendants and asked the defendants to manufacture it more than one year before applying for the patent. Plaintiff argues, however, that a sale from the inventor's own manufacturer to the inventor is not within the statutory bar.

"The totality of the circumstances must always be considered in order to ascertain whether an offer of the new invention was in fact made." *Envirotech Corp. v. Westech Engineering, Inc.*, 904 F.2d 1571 (Fed.Cir. 1990) (citations and quotations omitted). This approach is necessary because "the policies or purposes underlying the on sale bar, in effect, define it." *Id.* at 1574 quoting *RCA Corp. v. Data General Corp.*, 887 F.2d 1056 (Fed.Cir.1989). "[T]he on sale bar has the following underlying policies: (1) a policy against removing inventions from the public domain which the public justifiably comes to believe are freely available due to commercialization; (2) a policy favoring prompt and widespread disclosure of inventions to the public; and (3) a policy of giving the inventor a reasonable amount of time following sales activity to determine whether a patent is worthwhile." *In re Caveney*, 761 F.2d 671 (Fed.Cir.1985).

■ The purposes of the on sale bar are not served by applying it to a sale from a manufacturer to the inventor. To apply the bar in this manner would penalize inventors who are unable to manufacture their own products.

The cases cited by the defendants are not to the contrary. None of the cited cases involves a sale from the inventor's own supplier to the inventor. The cases involve sales by the patentee to a distributor or exclusive customer, *Ferag AG v. Quipp Inc.*, 45 F.3d 1562 (Fed.Cir.) cert. denied — U.S. ——, 116 S.Ct. 71, 133 L.Ed.2d 31 (1995); *Caveney*, 761 F.2d at 674; *Buildex, Inc. v. Kason*

*Indust., Inc.,* 849 F.2d 1461, 1462 (Fed.Cir. 1988); sales to a third party who subsequently acquires the rights to the patent, *J.A. LaPorte, Inc. v. Norfolk Dredging Co.,* 787 F.2d 1577 (Fed.Cir.) cert. denied 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *DeLong Corp. v. Raymond Int'l, Inc.,* 622 F.2d 1135 (3d Cir.1980) overruled on other grounds *Croker v. Boeing Co.,* 662 F.2d 975 (3d Cir.1981); and sales by a manufacturer to a third party, *Hobbs v. United States, Atomic Energy Commission,* 451 F.2d 849 (5th Cir.1971). The purposes of the on sale bar are served by applying it to these types of transactions because the patentee or third party is engaging in commercialization of the subject matter of the patent. Here, in contrast, the patentee did not sell the product, but merely bought it from its own manufacturer. Thus, the court concludes that the plaintiff has made a showing that this challenge to the patent's validity will fail.

■ Defendants' second argument is that the design was not Steven Sculler's invention. The patent is not valid if Steven Sculler "did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). Defendants contend that the Tse brothers designed the stamp handle top with a circular cap containing a convex lens. Defendants also argue that a customer suggested a flat lens in order to allow the stamp to stand upside down for reinking. Defendants rely on a July 30, 1990 letter from Marc Sculler to Top Stamp stating that a focus group of M & R's customers indicated that it would be desirable for the stamp mount to be able to stand upside down. Wilson Tse Decl.Exh. E.

Plaintiff responds that although M & R's customers indicated that a flat top handle would be useful, Steven Sculler, not a customer, developed the specific "watch crystal" design incorporated in the design patent. Steven Sculler's affidavit indicates that he conceived of the flat lens concept on July 24, 1990. S. Sculler Supp.Aff. ¶ 1. He has submitted a memorandum to his father and brother dated the same day suggesting that M & R use a lens that would look like a "watch crystal" and including a drawing of the design. Leonard Sculler Aff.Exh. B. The court concludes that M & R has made a

preliminary showing that the patent is Steven Sculler's invention, and thus defendants are not likely to prevail on this challenge to the design patent's validity.

■ Defendants' third argument is that the patent is invalid because the invention was obvious. 35 U.S.C. § 103 provides that "[a] patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

■ In order to determine whether a patent is obvious under 35 U.S.C. § 103, "the scope and the content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1965). In a design patent case, a person of ordinary skill is "the designer of ordinary capability who designs articles of the type presented in the application." *In re Nalbandian,* 661 F.2d 1214, 1216 (CCPA 1981).

The court must first examine whether "there is a 'reference to something in existence, the design characteristics of which are basically the same as the claimed design.'" *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1124 (Fed.Cir.1993) cert. denied 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993) quoting *In re Rosen,* 673 F.2d 388, 391 (CCPA 1982). The court has examined the FHC drawings, the design patent, and the objects described by each, and concludes that the design characteristics of the FHC handle top are basically the same as the design patent. In addition to the FHC prior art, both Leonard and Steven Sculler testified that they were aware of a flat rectangular lens that had been used in a handle top before Steven filed the design patent. This

top was not presented to the court, however, so the court could not assess this prior art.

After evaluating the prior art, the court must identify the differences between the prior art and the patent. In the design patent context, the court must focus on appearances, not uses. *In re Harvey*, 12 F.3d 1061, 1064 (Fed.Cir.1993). Both the FHC stamp handle top and the design patent have very similar appearances. Both are circular caps which contain a recess. A transparent lens is set within the recess. The only difference in appearance between the two stamp handle tops is that the transparent lens in the design patent is flat whereas the lens in the FHC top is convex.

The third inquiry that the court must consider is whether the patented design would be obvious to a designer of ordinary skill in light of the prior art. Defendants have submitted the declaration of David Weir, a professional industrial designer, who has designed several stamping devices. Based on Weir's declaration, the court concludes that "it would have been within the skill of the ordinary industrial designer prior to the year 1990 to use either a flat lens or a convex lens in the circular cap of a stamp handle of the type shown in the FHC drawings." Weir Decl. ¶ 8. Furthermore, "[i]n the event that one wished to permit the ink stamp to rest in an inverted position ..., it would be obvious to any designer that such a use could be accomplished by using a flat lens instead of a convex lens." *Id.*

Plaintiff responds that it presented a photograph of the Hopko prior art stamp to the patent examiner, who nevertheless did not consider the design obvious. Reply Memorandum Exh. D. The burden of overcoming the validity of a patent on the basis of obviousness is "especially difficult when the prior art was before the PTO examiner during prosecution of the application." *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1467 (Fed.Cir.1990).

Nevertheless, after examining both handle tops, the court concludes that the plaintiff has not demonstrated that this challenge to the patent's validity is likely to fail. The tops are almost identical in appearance. The plaintiff has not submitted an affidavit to

contradict Weir's conclusions, nor has the plaintiff suggested that Weir is not a designer of ordinary skill in the field of stamp design. Thus, the plaintiff has not established a likelihood of success on the merits with respect to the non-obviousness of the design patent.

█ Defendants' fourth argument is that the design is functional rather than ornamental, and thus is not patentable. "To qualify for protection, a design must present an aesthetically pleasing appearance that is not dictated by function alone, and must satisfy the other criteria for patentability." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148, 109 S.Ct. 971, 976, 103 L.Ed.2d 118 (1989). "[I]f a patented design is 'primarily functional', rather than primarily ornamental, the patent is invalid." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed.Cir.1988) (citations omitted). "When there are several ways to achieve the function of an article of manufacture, [however] the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear*, 988 F.2d at 1123.

Defendants argue that the flat lens design is dictated by two functions: allowing the stamp to stand upside down for re-inking and reducing distortion of an image placed underneath the lens. Steven Sculler has submitted an affidavit indicating that the first function, allowing the stamp to stand upside down, could be achieved in several ways. S. Sculler Supp.Aff. ¶ 6. He has also produced patents for several hand stamps that perform this function using different designs. Reply Brief Exh. C.

Steven Sculler indicates that the primary impetus for the "watch crystal" handle top design was to differentiate M & R's stamps from other stamps by changing the ornamental appearance. S. Sculler Supp.Aff. ¶ 2. Thus, the design is not dictated by function and this challenge to the patent's validity is likely to fail.

█ Defendants' fifth argument is that the design patent is invalid because it was described in a printed publication more than one year before Steven Sculler filed the patent application. 35 U.S.C. § 102(b).

Steven Sculler filed for the design patent on October 2, 1991. On October 4, 1990, Marc Sculler sent a letter to Wilson Tse enclosing a "recent newsletter" that depicted the design patent. Wilson Tse Decl.Exh. S. In the letter, Marc Sculler indicated that the newsletter "is sent to 2,500 customers." *Id.* Defendants argue that it is likely that the publication was mailed before October 2, 1990.

Steven Sculler testified that M & R did not disclose the watch crystal lens concept to the public until a trade show on October 4, 1990 and did not send the newsletter until after the trade show. *See also* Marc Sculler Supp. Aff. ¶ 8, 14. The date of mailing is irrelevant, however, because Steven Sculler credibly testified that the mount depicted in the newsletter has a convex lens, not the flat lens covered by the design patent.

Although the plaintiff has established that 4 of defendants' 5 challenges to the design patent's validity are likely to fail, the plaintiff has not demonstrated a reasonable likelihood that defendants' obviousness challenge will fail. Thus, the plaintiff has not demonstrated a likelihood of success on the merits with respect to the design patent.[2]

### b. *Mechanical Patent*

Defendants argue that the mechanical patent is invalid because: (1) the patent is anticipated by the prior art; (2) Steven Sculler was not the inventor; (3) the patent was obvious; and (4) the invention was known by others in this country.

■ All four challenges relate to a core set of facts. Defendants contend that a stamp mount manufactured by a Chinese company, Shenzen Modern Seal Materials Factory ("SMS mount") contains every element of the mechanical patent. Weir Decl. ¶ 19–11. Specifically, the SMS mount includes a handle, spring, adjuster, nut, stop, case, stem, and platen that are arranged and interact in the same manner as the elements in the mechanical patent.

In September, 1993, Steven Sculler and Alexander C. Wall submitted the patent application for the mechanical patent. Wilson Tse testified that prior to filing the patent application, Steven Sculler saw several mounts on display when Sculler and his father were visiting Claimchop's premises in Hong Kong in March, 1991. W. Tse Decl. ¶ 35. Wilson Tse also indicated that Steven Sculler examined the SMS mount and discussed its operation with Wilson Tse. *Id.* Steven Sculler even disassembled some of the mounts. *Id.* Wilson Tse did not, however, produce the SMS mount.

Because Steven Sculler allegedly saw the SMS mount prior to filing the patent application, defendants argue that Steven Sculler and Alexander C. Wall, the co-inventors named in the mechanical patent, were not the true inventors of the patent. Steven Sculler credibly testified that he has never seen the SMS mount before this litigation. His testimony is supported by his father's testimony who was present with Steven Sculler when Wilson Tse allegedly showed him the SMS mount.

Steven Sculler and Alexander C. Wall have also submitted affidavits and documents indicating that they began to develop the adjustable hand stamp prior to Steven Sculler's trip to Hong Kong. Pursuant to a contract between Wall and M & R, M & R is obligated to pay Wall royalties on its sales of the mechanical patent for five years, from January 1, 1993 to December 31, 1997. *See* Wall Aff. ¶ 4; S. Sculler Supp.Aff. ¶ 14. This contract undercuts Wilson Tse's testimony that Steven Sculler stole the patent because it would be irrational for M & R to pay royalties to a non-inventor. Thus, the plaintiff has met its burden of showing that this challenge to the mechanical patent's validity is likely to fail.

■ The defendants also argue that the mechanical patent is invalid because it was anticipated by the SMS mount. An invention is not patentable if it is anticipated by the prior art or if the invention is obvious in light of the prior art. 35 U.S.C. § 102. "Anticipation requires that all limitations of the claim

---

2. Because the court concludes that the plaintiff has not established a likelihood of success on the merits with respect to the design patent, the remainder of the opinion relates solely to the mechanical patent.

are found in the reference, or fully met by it." *Standard Havens Products, Inc. v. Gencor Indust., Inc.*, 953 F.2d 1360, 1367 (Fed. Cir.1991) cert. denied 506 U.S. 817, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992) (internal quotations omitted). The Weir affidavit indicates that the SMS mount contains every element of the mechanical patent. The plaintiff has not contested the Weir affidavit or argued that the SMS mount and the mechanical patent are different.

Even if they are identical, the defendant has not submitted any evidence that the SMS mount is "prior art." Prior art includes a printed publication or patent anywhere in the world, any item *in public use or on sale within the United States* more than one year before the patent application, and anything known or used in a publicly accessible form *in the United States.* 35 U.S.C. § 102 (emphasis added). The defendants have not identified any authority for including an item in public use in a foreign country within the definition of prior art. Therefore, the fact that the mount was known in foreign countries does not invalidate the patent. The defendants have also not provided any evidence that the SMS mount is identified in a printed publication or patented. Thus, the challenges to the mechanical patent's validity based on the prior art are likely to fail.

 Defendants also contend that the item is unpatentable because it "was known" in this country before Steven Sculler invented it. 35 U.S.C. § 102. Only "knowledge or use which is accessible to the public" is included within the purview of 35 U.S.C. § 102. *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 139 (Fed.Cir.1986). Edison Tse, Wilson's Tse's brother, is a resident of California. He alleges that he knew about the SMS mount prior to September, 1993, when Sculler and Wall filed the patent application. Edison Tse Decl. ¶ 14(b). He has not contended, however, that his knowledge was accessible to the public. Thus, Edison Tse's knowledge of the SMS mount is not likely to invalidate the mechanical patent.

#### c. *Objections to Both Patents*

Defendants also contend that both patents are unenforceable because the plaintiff engaged in inequitable conduct in acquiring the patents. Patent applicants owe a duty of good faith and candor to the United States Patent and Trademark Office ("PTO"). 37 C.F.R. § 1.56. "Inequitable conduct includes affirmative misrepresentation (sic) of material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed.Cir.1995).

Defendants assert that the plaintiff withheld or misrepresented material information regarding the prior art, sale and publication of the invention, and the identity of the inventor. The allegations of inequitable conduct are based on the same facts as the challenges to validity. As discussed above, the plaintiff has rebutted each allegation and made a preliminary showing that the defendants' challenges to the patent's validity will fail. Thus, it is likely that the defendants' arguments regarding inequitable conduct will also fail.

#### 2. *Infringement*

In addition to demonstrating a likelihood of success on validity, the plaintiff also must establish a likelihood of success on infringement. The plaintiff has submitted the affidavit of Frederick W. Dour that compares the allegedly infringing materials with the patented products. Dour concludes that Top Stamp's materials infringe both the design and mechanical patent.

The defendants have not submitted any analysis to contradict Dour's affidavit. They apparently do not dispute that their product infringes both patents. Instead, they argue that the patents are invalid.

Based on the uncontradicted analysis contained in the Dour affidavit, the court concludes that the plaintiff has demonstrated a reasonable likelihood of success on infringement.

#### C. *Irreparable Harm*

"[W]here validity and continuing infringement have been clearly established ... immediate and irreparable harm is presumed." *Smith Int'l Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed.Cir.) cert. denied 464 U.S. 996, 104

S.Ct. 493, 78 L.Ed.2d 687 (1983). Plaintiff argues that it has made a strong showing and thus, is entitled to the benefit of the presumption.

■ In addition to relying on the presumption, the plaintiff indicates that the defendants are marketing their infringing products by directly comparing the plaintiff and defendants' products and emphasizing the lower cost of the infringing products. Plaintiff has identified at least one customer who has already switched to the infringing products. Tice Aff. M & R asserts that in the absence of an injunction M & R will lose more customers and valuable goodwill. The court concludes that the plaintiff has established irreparable harm.

### D. *Balance of the Equities*

In evaluating the balance of the hardships, the court weighs "[t]he magnitude of the threatened injury to the patent owner ..., in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson*, 820 F.2d at 390 (citation and internal quotations omitted). The plaintiff has made a strong showing of a likelihood of success on the merits with respect to the mechanical patent. The plaintiff is likely to suffer irreparable harm to its business reputation and goodwill if Top Stamp is not enjoined from selling products which infringe the mechanical patent.

Top Stamp alleges that no equities favor M & R because M & R copied the SMS mount and patented it. As discussed above, the court has made a preliminary determination that this allegation is false. Top Stamp is part of the Tse brothers' group of stamp companies, which allegedly comprise one of the largest pre-inked stamp mount companies in the world. Top Stamp has not argued that a preliminary injunction would drive it out of business.

### E. *The Public Interest*

The "protection of patents furthers a strong public policy ... advanced by granting preliminary injunctive relief when it appears that, absent such relief, patent rights will be flagrantly violated." *H.H. Robertson*, 820 F.2d at 391. Because the plaintiff has made a strong showing that the defendants are infringing a valid patent, public policy favors an injunction.

### III. *CONCLUSION*

Based upon the foregoing, plaintiff's motion for a preliminary injunction is GRANTED with respect to the mechanical patent and DENIED with respect to the design patent. An appropriate order follows.

### *ORDER*

This matter having come before the Court on the application of plaintiff M & R Marking Systems for a preliminary injunction; and

For the reasons set forth in the attached opinion; and

For good cause shown;

It is on this 10th day of May, 1996 ORDERED that plaintiff's application for a preliminary injunction is granted with respect to patent # 5,377,599 ("mechanical patent") issued on January 3, 1995 is GRANTED; and

It is further ORDERED that plaintiff's application for a preliminary injunction with respect to patent DES.346,396 is DENIED; and

It is further ORDERED that defendant Top Stamp, Inc. and its agents, successors, and assigns, are enjoined from importing, making, using, offering to sell, or selling products which infringe the mechanical patent; and

It is further ORDERED that plaintiff M & R Marking Systems, Inc. shall post a bond of $250,000 pursuant to Federal Rule of Civil Procedure 65(c).