REYNA, Circuit Judge,
dissenting.
The Supreme Court has instructed that an on-sale bar under 35 U.S.C. § 102(b) shall arise, if at all, only when the patented invention is the subject of a commercial offer for sale and the invention is ready for patenting more than one year before the patent’s filing date. Pfaff v. Wells Elecs., 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). Yet the majority concludes that Hamilton Beach’s purchase order sent to its foreign supplier, which asked the supplier to build a set of slow cookers pursuant to Hamilton Beach’s specifications, resulted in an offer to sell a patented invention that anticipates the claims of Hamilton Beach’s patent. In order to reach this conclusion, the majority is quick to note that there is no “supplier exception” to otherwise anticipatory offers for sale under § 102(b), while at the same time it overlooks the Supreme Court’s requirement that the offer be a “commercial” one. Because the majority’s oversight portends grave consequences for innovation and experimental use, I respectfully dissent.[1]
When the Supreme Court decided Pfaff, it explicitly rejected this court’s multifactor, “totality of the circumstances” test we had previously used to determine whether there was an on-sale bar. 525 U.S. at 66 & n. 11, 119 S.Ct. 304; see also Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 182 *1380 F.3d 888, 890 (Fed.Cir.1999). In its place, the Court substituted a two-pronged test, having a first prong that requires a commercial offer for sale. Pfaff, 525 U.S. at 67, 119 S.Ct. 304. This requirement makes sense: “An inventor can both understand and control the timing of the first commercial marketing of his invention.” Id. Indeed, the Court was careful to distinguish between a “sale [that] was commercial rather than experimental in character.” Id.; see also Honeywell Int’l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 998 (Fed.Cir.2007) (“Based on [City of Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126, 24 L.Ed. 1000 (1877) ], this court has consistently distinguished permitted experimental uses from barred public or commercial uses.”). In my view, an overly-broad application of the no-supplier-exception rule would all but abolish this distinction and render the experimental-use exception useless for a significant class of innovators.
After Pfaff was decided, this court began fashioning the no-supplier-exception rule in Brasseler. The patentee, Brasseler, U.S.A., had its exclusive manufacturer produce 3,000 surgical saws embodying the invention set forth in its patent’s claims. Brasseler, 182 F.3d at 889. Noting that the saws were ordered “in large quantity for resale,” id. at 891, this court concluded that “[t]he transaction at issue undisputedly was a ‘sale’ in a commercial law sense,” id. at 890. Indeed, it was “not a case in which an individual inventor takes a design to a fabricator and pays the fabricator for its services in fabricating a few sample products.... [Instead, the manufacturer] made a large number of the agreed-upon product for general marketing by Brasseler.” Id. at 891. Only after concluding that the sale was commercial in nature did this court reject the assertion that the relationship between the supplier and the patentee somehow prevented the sale from triggering the on-sale bar.
Shortly thereafter, in Special Devices, Inc. v. OEA, Inc., 270 F.3d 1353 (Fed.Cir.2001), this court applied the no-supplier-exception after concluding that the offer was commercial in nature. Id. at 1357. The patentee, OEA, Inc., contracted with its supplier to provide it with 20,000 patented embodiments of its “all-glass header” for use in automobile airbags. Id. at 1354. In addition, the patentee agreed to supply the supplier with millions of the patented headers annually. Id. Unsurprisingly, OEA “conceded that these transactions were ‘commercial,’ not experimental” given that it was unrebutted that OEA “had purchased [the headers] for commercial purposes.” Id. at 1355, 1356. Thus, the only two instances where this court has deployed the no-supplier-exception rule involved offers or sales that unquestionably met the Supreme Court’s requirement that the offer be part of a “commercial” offer or sale.
With no review of whether the offer was commercial in nature, the majority in this case has extended the no-supplier-exception rule to a case without considering whether the purchase order was placed for purely experimental purposes. Yet the circumstances indicate that it was.[2] The purchase order “was not the result of customer demand or projections,” Appellant’s *1381 Br. 6 (citing Joint App’x 4975), and, at the time the order was placed, Hamilton Beach was repeatedly changing the product specification due to a series of design failures, most notably, foodstuffs leaking through the lid. The design remained unstable for nearly three months after the purchase order was placed. Just as the Supreme Court applied the experimental-use exception when Mr. Nicholson, the patentee in City of Elizabeth, tested and perfected his pavement on a busy toll road in Boston — inspecting and tapping it with his cane almost daily — for more than six years before filing for a patent, 97 U.S. at 133-37, Hamilton Beach was similarly entitled to test and perfect its slow cooker under the experimental-use exception.[3] See Pfaff, 525 U.S. at 64, 119 S.Ct. 304 (“[A]n inventor who seeks to perfect his discovery may conduct extensive testing without losing his right to obtain a patent for his invention — even if such testing occurs in the public eye.”). At the very least, the majority should have identified how the purchase order was commercial in nature when the manufacturing resulted in slow cookers that were incapable of “inhibit[ing] leakage of the food stuffs [sic] from the interior of the container.” But cf. U.S. Patent No. 7,485,831 col. 8 11. 50-51 (filed Mar. 1, 2006). If the experimental-use exception is to have any continued vitality, this court must refrain from overlooking the Supreme Court’s express requirement for a commercial offer for sale when deploying the no-supplier-exception rule.
My greatest concerns involve the implications this case will have for future innovators, most notably small enterprises and individual inventors who lack in-house prototyping and fabricating capabilities. Cf. Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1258-61 (Fed.Cir.2001) (reversing summary judgment of invalidity and concluding that the sale was non-commercial where the patentee had a third-party test its patented trailer because it lacked in-house testing capabilities). Whenever the development process requires those entities to manufacture working prototypes or pre-mass-production samples, they often have no choice but to reach out to third-party suppliers. Under the majority’s holding in this case, a single offer to buy for purely experimental purposes may trigger the on-sale bar, and the experimental-use exception will offer them no salvation. It is from this evisceration of the experimental-use exception that I respectfully dissent.

. The majority affirmed invalidity on the single issue of on-sale bar. This dissent is limited to its judgment on that issue, which I find to be erroneous.

. The majority states that the "experimental use defense has [not] been asserted by Hamilton Beach in this case.” Maj. Op. 1377 n. 2. While Hamilton Beach did not use the phrase "experimental use,” it argued at length that its offer for sale was non-commercial and that its engineers were attempting to overcome serious shortcomings when the offer was made. Appellant's Br. 53-57. The majority chooses to ignore the interplay between the requirement for a commercial offer for sale and experimental use. But see Pfaff, 525 U.S. at 67, 119 S.Ct. 304. I find that the issues addressed by the parties and, indeed the ma *1381 jority, lay a sufficient framework under which to analyze all the issues in this case.

. The majority contends that the use intended by Hamilton Beach in this case was not experimental because it ordered almost 2,000 (actually 1,952) slow cookers. This sort of quantitative analysis was previously accepted under the "totality of the circumstances” test — a test rejected by the Supreme Court in Pfajf. Here, Hamilton Beach was not "stockpiling] commercial embodiments of their patented invention” as was occurring in Brasseler and Special Devices. Special Devices, 270 F.3d at 1354. It would make no sense for Hamilton Beach to stockpile slow cookers for future sales when its slow cookers were leaking at the time. Rather, the circumstances suggest that Hamilton Beach was in the midst of testing and perfecting its slow cookers under the experimental use exception when the offer was made. This is true — and can be true — even if the invention was ready for patenting at that time. See City of Elizabeth, 97 U.S. at 133; see also Atlanta Attachment Co. v. Leggett & Platt, Inc., 516 F.3d 1361, 1368-70 (Fed.Cir.2008) (Prost & Dyk, JJ., concurring); cf. Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1379-80 (Fed.Cir.2005) (“[E]vidence of experimental use may negate either the ‘ready for patenting’ or 'public use' prong.”).