NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CATERPILLAR INC., CATERPILLAR PAVING PRODUCTS, INC.,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**WIRTGEN GMBH, JOSEPH VOGELE AG, WIRTGEN GROUP HOLDING GMBH, WIRTGEN AMERICA, INC.,**
*Intervenors*

---

2019-2306

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1088.

---

Decided:  December 18, 2020

---

LUKE MCCAMMON, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for appellants.  Also represented by JAMES R. BARNEY, MAREESA ARNITA FREDERICK.

HOUDA MORAD, Office of General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by SIDNEY A. ROSENZWEIG, DOMINIC L. BIANCHI, WAYNE W. HERRINGTON.

MICHAEL E. JOFFRE, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for intervenors. Also represented by PAUL ASHLEY AINSWORTH, DONALD BANOWIT, WILLIAM MILLIKEN, RALPH WILSON POWERS, III, DANIEL YONAN; MARK ANDREW KILGORE, RYAN D. LEVY, SETH R. OGDEN, WILLIAM E. SEKYI, JOHN FRANCIS TRIGGS, Patterson Intellectual Property Law, PC, Nashville, TN.

_____

Before DYK, SCHALL, and HUGHES, *Circuit Judges.*

DYK*, Circuit Judge.*

The International Trade Commission ("Commission") determined that certain claims of U.S. Patent No. 7,140,693 ("the '693 patent") were invalid because of an on-sale bar. Caterpillar Inc. and Caterpillar Paving Products, Inc. (collectively "Caterpillar") appeal the Commission's invalidity determination as to claim 28.[1] We *affirm.*

_____

[1] The Commission found claims 1, 15–18, 24, 26–28, 36, and 38 of the '693 patent invalid due to the on-sale bar. Caterpillar only appeals that invalidity ruling with respect to claim 28. The other claims were also found invalid on other grounds.

*Wirtgen GMBH v. International Trade Commission*, No. 19-2320, which involved the same Commission proceeding, was deconsolidated from this case on November 6, 2020, and affirmed pursuant to Fed. Cir. R. 36 on November 10, 2020.

## BACKGROUND

The '693 patent "relates generally to work machines for the treatment of roadway surfaces, and more particularly to a planer or milling machine for asphalt and concrete." '693 patent, col. 1 ll. 6–8.  The '693 patent discloses a milling machine with a rear wheel or track that can be swung between a "retracted" position, in which the wheel or track is inside the frame of the machine, and a "projecting" position, in which the wheel or track is outside the frame.  *Id.* col. 2 ll. 43–49.

Caterpillar, the current owner of the '693 patent,[2] filed a complaint with the Commission alleging violations by Wirtgen GmbH, Wirtgen Group Holding GmbH, and Wirtgen America, Inc. (collectively, "Wirtgen") of section 337 of the Tariff Act of 1930, as amended, by reason of importation of products that infringed certain claims of the '693 patent.[3]   The Commission instituted an investigation based on the complaint, and an evidentiary hearing was held before an administrative law judge.

Wirtgen argued before the administrative law judge that certain asserted claims of the '693 patent (including claim 28) were invalid based on a prior sale of the SF 102 C machine sold by Bitelli before the critical date of the '693 patent.  Under the on-sale bar provision of pre-Leahy-Smith America Invents Act ("pre-AIA") version of 35 U.S.C. § 102(b), which governs here, a patent claim is invalid if "the invention was . . . on sale in this country, more than

[2]   The original assignee of the '693 patent was Bitelli S.p.A. ("Bitelli"), an Italian company, who subsequently assigned its rights in the patent to Caterpillar.  Bitelli was acquired by Caterpillar in 2000.

[3]   Caterpillar asserted a different patent (not the '693 patent) against Joseph Vögele AG in the underlying proceedings.

one year prior to the date of the application for patent in the United States."

As evidence that the Bitelli SF 102 C machine was on sale in the United States before the '693 patent's critical date of April 26, 2001, Wirtgen relied on two Bitelli records. The first Bitelli record was an invoice for sale dated June 21, 1999, identifying a Bitelli SF 102 C machine sold to a customer with an address in California. The second Bitelli record was a spreadsheet showing that a Bitelli SF 102 C machine was sold with an invoice date of July 27, 2000, to the same customer as in the June 1999 invoice. The machine referenced in the July 2000 record was found in the United States during the Commission's investigation in 2018.

Caterpillar did not dispute that the records showed that the Bitelli SF 102 C machines were on sale by the year 2000 (and does not now dispute that the machines met all of the claim limitations). But Caterpillar contended that the two Bitelli records did not show that "the sales were in the United States" and that the invoices showed that the machines were delivered in Italy. J.A. 117–18. For example, Caterpillar noted that the June 1999 invoice listed the "Port" as "Free Port Our Premises," suggesting that the machine was delivered at Bitelli's premises in Italy. J.A. 118.

The administrative law judge focused primarily on the June 1999 invoice. The administrative law judge determined that, "[e]ven if this machine was delivered in Italy, the invoice [was] evidence of commercial activity directed to the United States that would satisfy the 'on sale' bar." *Id.* The administrative law judge also found corroboration in the July 2000 record of a sale of the Bitelli SF 102 C machine to the same customer because "a machine bearing that serial number was discovered in the United States." J.A. 118–19. The administrative law judge found that "[t]hese facts, considered collectively, [were] clear and

CATERPILLAR INC. v. ITC

convincing evidence that the Bitelli SF 102 C was 'on sale in this country' by at least July 2000." J.A. 119. The administrative law judge also determined that Wirtgen proved that the Bitelli SF 102 C machine met the limitations of claim 28 of the '693 patent, and that the claim was therefore invalid under the on-sale bar of 35 U.S.C. § 102(b) (pre-AIA). The Commission determined not to review the aspect of the administrative law judge's decision that found claim 28 (and other claims) invalid as anticipated by the Bitelli SF 102 C machine. Accordingly, the administrative law judge's decision became the Commission's decision. *See* 5 U.S.C. § 557(b); 19 C.F.R. § 210.42(h).

Caterpillar timely appealed to this court, and we have jurisdiction under 28 U.S.C. § 1295(a)(6). After oral argument, we requested supplemental briefing, including briefing on the significance of the inclusion of "CUSTOMS TARIFF N. 84305000" in the June 1999 invoice. In support of their briefing, the parties submitted additional materials from the administrative record, including additional invoices from Bitelli to other customers.

DISCUSSION

"We review the Commission's final determination of a violation of section 337 under the standards of the Administrative Procedure Act ('APA')." *Vizio, Inc. v. Int'l Trade Comm'n*, 605 F.3d 1330, 1336 (Fed. Cir. 2010). "Under the APA, this court reviews the Commission's legal determinations de novo, and its factual findings for substantial evidence." *Id.* (citing 5 U.S.C. § 706(2)(A), (E)). "Anticipation is a question of fact that we review for substantial evidence." *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1364 (Fed. Cir. 2019).

The pre-AIA on-sale bar provides that "[a] person shall be entitled to a patent unless . . . the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C.

§ 102(b) (pre-AIA).[4] "Whether an invention was on sale within the meaning of § 102(b) is a question of law that we review de novo based upon underlying facts . . . ." *Electromotive Div. of Gen. Motors Corp. v. Trans. Sys. Div. of Gen. Elec. Co.*, 417 F.3d 1203, 1209 (Fed. Cir. 2005). "[A]n accused infringer carries the burden of proving invalidity by clear and convincing evidence." *Id.* at 1212 n.2.

On appeal, Caterpillar challenges the Commission's determination that the Bitelli SF 102 C machine was "on sale in this country." Under the pre-AIA on-sale bar, if the "offer for sale" was "made in this country," then the invention would be "on sale" in this country even if the invention was sold for use outside of the United States. *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426, 434 (9th Cir. 1973) (invention shipped to Australia was on sale in the United States because the "offer for sale" was made in Seattle); *see also Aguayo v. Universal Instruments Corp.*, 356 F. Supp. 2d 699, 743 (S.D. Tex. 2005) (product manufactured in Holland and shipped to Canada was on sale in this country because "the offer to sell and acceptance of the [product] occurred and were exchanged within the United States").

But here, where it appears that the transfer of title occurred in Italy, our cases do not hold that the mere fact that the sale was made to a United States company is sufficient. We must analyze whether the invention was sold for use in the United States. Under such circumstances, as we noted

---

[4]    Under the revised on-sale bar provision of the AIA, "[a] person shall be entitled to a patent unless . . . the claimed invention was patented, described in a printed publication, or in public use, *on sale*, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a) (AIA) (emphasis added). "[I]n the 2011 America Invents Act, Congress amended Section 102 to eliminate the 'in this country' geographic limitations." 1 Chisum on Patents § 3.05 (2020).

CATERPILLAR INC. v. ITC

in *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, "a commercial offer for sale made by a foreign entity that is directed to a United States customer at its place of business in the United States may serve as an invaliding activity." 726 F.3d 1370, 1375 (Fed. Cir. 2013) (citing *In re Caveney*, 761 F.2d 671, 676–77 (Fed. Cir. 1985)); *see also id.* at 1375–76 (foreign supplier's confirmation of purchase order was invalidating activity under pre-AIA on-sale bar where the buyer "listed on the purchase order its facility in Tennessee as the shipping address and its office in Virginia as the billing address"); *In re Caveney*, 761 F.2d at 673–74, 677 ("offer from England" was "directed to" a buyer "at its place of business in the United States" where "samples of the claimed invention" were sent to the United States buyer, and the invention was ultimately shipped to the United States).

Here, there is substantial evidence to support the Commission's finding that the sale documented by the June 1999 invoice constituted "commercial activity directed to the United States," J.A. 118, namely that the Bitelli SF 102 C machine was sold to a United States customer for use in this country.

Several aspects of the June 1999 invoice provide evidence that the sale of the Bitelli SF 102 C machine was for use in the United States. First, the face of the invoice indicates that the sale was to a buyer with a United States address.

Second, other indicia in the invoice show that this was a sale for export to the United States. The June 1999 invoice lists a "CUSTOMS TARIFF N. 84305000" in the leftmost column and notes that the "goods" were "of Italian origin." J.A. 1493. Although 84305000 appears to refer to a tariff subheading number for the European Union, the first six digits correspond to the analogous subheading in the Harmonized Tariff System of the United States ("HTSUS"), 8430.50, which is for "[o]ther moving, grading,

leveling, [or] scraping . . . machinery, for earth, minerals or ores" that are "self-propelled."    HTSUS, heading 8430 (1999).  While the number 84305000 appears on an invoice to an Italian buyer of another machine, only the June 1999 invoice labels the number as a customs tariff number, and the June 1999 invoice is the only invoice that refers to a "customs tariff" number.  There would be no need to note a customs tariff number for a sale between an Italian seller such as Bitelli and a buyer located in Italy or another European Union country, since the establishment of the European Union resulted in "the elimination, as between Member States, of customs duties and quantitative restrictions on the import and export of goods."  Treaty on European Union, Title II Art. G(B)(3), 1757 U.N.T.S. 3, 14 (Feb. 7, 1992).  The invoice also contains a description of the Bitelli SF 102 C machine in English and identifies the currency as U.S. dollars, also some indication of a sale for export to the United States.

Third, the VAT assessment in the June 1999 invoice to the United States customer is further evidence that the item was not for use in Italy or elsewhere in the European Union.  The VAT assessments for Bitelli's invoices to customers in Italy list the "VAT%" as "20,000" or 20 percent. J.A. 1487, 1489; *see also* J.A. 1488 ("VAT" in right-most column of invoice listed as "20").  The VAT percentages for these invoices appear to refer to a standard VAT rate for Italy.  *See* Dep't of the Navy, *Country Tax Law Study for Italy* 6 (2010), https://it.usembassy.gov/wp-content/uploads/sites/67/2016/04/USSSO-Tax2010.pdf.

In contrast, the VAT assessment in the June 1999 invoice is listed as "Non Impon. Art. 8/1˚A," near the text, "VAT Exemption Title."  J.A. 1493.  The parties' agreed-upon translation of "Non Impon. Art. 8/1˚A" is "Not Taxable Article 8/1 A."  J.A. 1157.  *"Non imponibili"* in Italian indicates a "zero rated" transaction.  *Country Tax Law Study for Italy*, *supra*, at 6.  "'Zero rated' transactions allow the

CATERPILLAR INC. v. ITC

supplier to entirely deduct the VAT already paid on purchases." *Id.* at 8.

Article 8/1 A refers to a provision of Italian law, Article 8 of the Presidential Decree No. 633 of October 26, 1972, which includes among "zero rated" transactions exports of goods from Italy to the territory of a non-European Union country. *Id.*; *see also id.* at 78–79 (translation of Art. 8 of Presidential Decree No. 633 of October 26, 1972).[5]

Fourth, the fact that another Bitelli SF 102 C machine sold in July 2000 to the same customer was found in the United States also suggests that the June 1999 sale of the Bitelli SF 102 C machine was for use in the United States.

Finally, there are no contrary indicia that the machine in the June 1999 invoice was sold for use in Italy or anywhere else outside the United States. Caterpillar offers no evidence that the customer in the June 1999 invoice had a presence other than in the United States.

## CONCLUSION

The Commission's determination that the Bitelli SF 102 C machine was on sale in this country, as documented by the June 1999 invoice, is supported by substantial evidence. We therefore affirm the Commission's decision invalidating claim 28 of the '693 patent as anticipated by the Bitelli SF 102 C machine.

---

[5]    As another point of comparison, the invoices for buyers in Belgium and France (other countries in the European Union in 1999) list the VAT assessment as "Non Imp. Art. 41." J.A. 1490, 1492. "Art. 41" appears to refer to Article 41 of Decree Law no. 331 of August 30, 1993, which "governs VAT on intra-Community acquisitions of goods." *Country Tax Law Study for Italy*, *supra*, at 5; *see also* Wirtgen's Suppl. Br. Ex. A.

10                                              CATERPILLAR INC. v. ITC

**AFFIRMED**